UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

|  |  |  |
|---|---|---|
| | : | |
| Gordon Bock, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | File No. 1:05-CV-151 |
| | : | |
| Steven Gold, Janice Ryan, | : | |
| Susan Blair, David Turner, | : | |
| and Stuart Gladding, | : | |
| Defendants. | : | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
### (Paper 57)

Plaintiff Gordon Bock has filed this action against
Defendants Steven Gold, Janice Ryan, Susan Blair, David
Turner, and Stuart Gladding, in their individual and
official capacities, as employees of the Vermont Department
of Corrections.  Bock alleges that the Defendants violated
his civil rights while he was an inmate in the Vermont
prison system by denying him the ability to practice his
religion.  Bock's claims are brought pursuant to both 42
U.S.C. § 1983 and the Religious Land Use and
Institutionalized Persons Act("RLUIPA") 42 U.S.C. § 2000cc
et seq.  He seeks injunctive relief as well as compensatory
and punitive damages.  The case is currently before the

1

Court on the Defendants' motion for summary judgment.

<u>Background</u>

Unless otherwise indicated, the following facts are undisputed.

Bock was incarcerated at the Northwest State Correctional Facility ("Northwest") between October 22, 2004 and April 15, 2005.  (Paper 58, ¶ 1).  He was transferred to Northern State Correctional Facility ("Northern State") on April 15, 2005 and remained there until his release on May 10, 2005.  (<u>Id.</u> at ¶ 3).  He has not been incarcerated since his release.

The Jewish holidays of Hanukkah and Purim occurred while Bock was incarcerated at Northwest.  (Paper 58, ¶ 2).  Bock alleges that he requested numerous religious accommodations for these two holidays, such as visitation by a rabbi, a menorah, and special foods brought in from outside the prison.  (<u>Id.</u> at ¶ 43).  Some of these requests were granted, at least in part, and some were denied.  (<u>Id.</u> at ¶¶ 43-45).  While Bock was allowed to prepare his own food at the prison, he was not allowed to bring in outside food. (<u>Id.</u> at ¶¶ 44-45).  Bock was allowed visitation by a rabbi, but was only allowed to have an electric menorah while the

2

rabbi was there.  (<u>Id.</u> at ¶ 43).  The Defendants cited
safety and security concerns for denying Bock's requests.

Passover occurred during Bock's incarceration at
Northern State.  (Paper 58, ¶ 4).  Bock requested, inter
alia, special foods to be brought in so he could meet the
dietary restrictions of Passover.  (Paper 66-2, ¶¶ 2-3).  No
food was provided for Bock's Passover observance.  (Paper
66-11, ¶ 1).

The Department of Corrections has a written policy that
requires certain allowances and procedures for inmate
religious observances.  Department policy requires that
prior to barring any equipment, substances, or observances
of a religion, the Superintendent of the facility shall
submit a report to the Commissioner for approval.  Vermont
Department of Corrections Policy 380 § 4.5.1.  (Paper 66-4,
2).  No report about the denial of Bock's requests was ever
submitted to or approved by the Commissioner.

During the period at issue, Defendant Gold was the
Commissioner of the Department of Corrections. (Paper 58, ¶¶
6-7).  Defendant Ryan was the Deputy Commissioner of the
Department of Corrections.  (<u>Id.</u> at ¶¶ 8-9).  Defendant
Blair was the Superintendent of Northwest.  (<u>Id.</u> at ¶¶ 11-

12).   Defendant Turner was a Corrections Living Unit Supervisor at Northwest.  (<u>Id.</u> at ¶ 13).  Defendant Gladding was the Corrections Service Manager and Superintendent of Northern State.  (<u>Id.</u> at ¶ 10).

Summary Judgment Standard

The Court will grant summary judgment if no genuine issue of material fact exists, and, based on undisputed facts, the moving party is entitled to judgment as a matter of law.  <u>Salahuddin v. Goord</u>, 467 F.3d 263, 272 (2d Cir. 2006)(citing <u>D'Amico v. City of New York</u>, 132 F.3d 145, 149 (2d Cir. 1998)).  In deciding whether there is a genuine issue of material fact the Court must resolve all ambiguities and draw all inferences in the light most favorable to the nonmoving party.  <u>Id.</u> (citing <u>Ford v. McGinnis</u>, 352 F.3d 582, 287 (2d Cir. 2003)).

Discussion

I.  Injunctive Relief

Bock was released from state custody on May 10, 2005 and has since been released from probation.  He is no longer under the control of the Department of Corrections.  The parties agree that the issue of injunctive relief is now moot.  Therefore, I recommend that any claim for injunctive

4

relief be dismissed as moot.

II.  42 U.S.C. § 1983

Bock brings an action against Defendants under 42 U.S.C. § 1983 for deprivation of his religious rights.  Section 1983 creates a cause of action against those who deprive any person of their rights under the Constitution or Federal law.  Maine v. Thiboutot, 448 U.S. 1, 4-6 (1980).

A.  Sovereign Immunity

Defendants argue that they are immune from suit under § 1983 in their official capacities under the Eleventh Amendment of the United States Constitution.

Sovereign immunity extends to state officials in their official capacities.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  Therefore, the Defendants are immune from suit under § 1983 in their official capacities unless the immunity has been waived.  See id.

Bock argues that the Defendants waived Eleventh Amendment immunity by failing to assert it in their Answer. The first affirmative defense listed in the Answer is "Sovereign immunity".  (Paper 10, 3).  While Defendants did not explicitly spell out Eleventh Amendment immunity, the Supreme Court has said that Eleventh Amendment immunity is

5

often referred to as sovereign immunity even if it is a misnomer.  Alden v. Maine, 527 U.S. 706, 712-13 (1999). While there may be a technical distinction between sovereign immunity and Eleventh Amendment immunity, it is not a distinction that would fail to inform the Plaintiff that it was raised or would cause Plaintiff prejudice.  It has therefore not been waived.

Bock also argues that the Vermont Tort Claims Act, 12 V.S.A. § 5601, has waived Eleventh Amendment immunity.  This argument lacks merit.  Section 5601(g) explicitly states that, "Nothing in this chapter waives the rights of the state under the Eleventh Amendment of the United States Constitution."  Furthermore, Vermont's waiver of sovereign immunity in its own courts under § 5601 is not a waiver of Eleventh Amendment immunity in federal court.  Richards v. State's Attorneys Office, 40 F. Supp. 2d 534, 537-38 (D. Vt. 1999).  Therefore, the Defendants are immune from suit under § 1983 in their official capacities.

Eleventh Amendment immunity does not extend to suit against Defendants in their individual capacities and those claims are unaffected.  They are discussed below.

B.  Personal Involvement

6

Defendants Gold, Ryan, Gladding, and Blair claim that they are entitled to summary judgment on the claims against them in their individual capacities because they had no personal involvement in the alleged violations.

Personal involvement is required for an award of damages under § 1983.  Moffit v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").  While "respondeat superior cannot form the basis for a § 1983 claim," Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998), the personal involvement of a supervisory defendant in a § 1983 claim may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or

7

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.  <u>See Hernandez v. Keane</u>, 341 F. 3d 137, 144 (2d Cir. 2003); <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995).

Bock concedes that defendants Gold and Ryan in their positions as Commissioner and Deputy Commissioner were not personally involved in any violation as they had no knowledge of Bock's requests for religious accommodations. Therefore, there can be no claim for damages under § 1983 against Gold or Ryan.

Defendant Gladding claims that he was not aware of Gold's requests for accommodation and therefore was not personally involved in any violation.  Bock argues that Gladding should have received Bock's written request for Passover accommodations or seen a notation about accommodations requests in Bock's file when Bock was transferred to Northern State.

While Bock has produced no direct evidence showing that Gladding was aware of his requests, it would be reasonable to infer from the evidence that Gladding learned of his request.  Bock's written request for Passover accommodations

8

was sent to Chris Barton, a subordinate of Gladding, and
there was a notation in Bock's file when he was transferred
to Northern State about accommodations.  This evidence
combined with the Department's policy of reporting all
religious accommodations requests to the Commissioner before
denying them, creates a reasonable inference that Gladding
had such knowledge.  Gladding may be personally involved by
knowing of the violation and failing to remedy the wrong.
Therefore, I recommend that summary judgment not be granted
because there is a genuine factual dispute over Gladding's
personal involvement.

Defendant Blair claims that there is insufficient
evidence to show that she was personally involved in any
violation.  Bock alleges that he informed Blair of his
requests for accommodations repeatedly.  Blair claims that
she does not recall being made aware of any requests.  This
conflicting testimony creates a genuine dispute on the issue
of Blair's personal involvement and summary judgment is
inappropriate on this issue.

III.  RLUIPA

Bock also brings an action against Defendants pursuant
to RLUIPA, 42 U.S.C. § 2000cc et seq.  RLUIPA prohibits the

9

government from imposing substantial and unjustified burdens on the religious exercise of prisoners.  42 U.S.C. § 2000cc-1(a).  RLUIPA defines religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000-5(7)(A). RLUIPA provides that "a person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."  44 U.S.C. § 2000cc-2(a).  Defendants argue that "appropriate relief" does not include monetary damages and therefore RLUIPA does not create any cause of action for damages. Bock claims that Congress intended "appropriate relief" to include monetary damages and, without that possibility, the protections of RLUIPA are weakened.

While the Second Circuit has not decided this issue, many courts have addressed the issue with differing results. See Smith v. Allen, 502 F.3d 1255, 1270 (11th Cir. 2007)("To put it mildly, 'there is a division of authority' on this question.").  In Madison v. Virginia, 474 F.3d 118, 131-32 (4th Cir. 2006), the court held that Congress did not intend to abrogate a state's Eleventh Amendment immunity from damages claims under RLUIPA.  The court decided that

"appropriate relief" is an open-ended term, indicating that Congress had not unequivocally extended a waiver of immunity to monetary claims. Id. Thus, the court concluded that plaintiffs were barred from bringing damages claims against states under RLUIPA. Id. at 133.

Some courts have rejected the reasoning of Madison. In Smith v. Allen, the court reasoned that in the absence of guidance from Congress with respect to remedies, the availability of all appropriate remedies should be presumed. 502 F.3d at 1270-71 (citing Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 68-69 (1992)). The court found that "appropriate relief" provided no guidance and therefore presumed that monetary damages were available under RLUIPA. Id.

The court in Daker v. Ferrero, 475 F. Supp. 2d 1325 (N.D. Ga. 2007), provides a thorough overview of the views on RLUIPA damages taken by the federal courts. Id. at 1335-37. The court addressed whether under the canon of constitutional avoidance RLUIPA authorizes monetary damages against defendants in their individual capacities. Id. at 1333-47. The constitutional avoidance canon states that when a statute is susceptible to two possible constructions,

11

and one raises serious constitutional questions, the other
construction must be adopted.  Id. at 1334 (citing Jones v.
United States, 526 U.S. 227, 239 (1999) and Clark v.
Martinez, 543 U.S. 371 (2005)).  Dakar found that RLUIPA was
susceptible to at least two possible constructions because
of the uncertainty of RLUIPA jurisprudence and the ambiguity
of the term "appropriate relief".  Id. at 1335-37.  The
court concluded that serious constitutional questions would
arise if RLUIPA was interpreted to authorize damages against
private individuals.  Id. at 1338-47.  The court analyzed
the constitutionality of RLUIPA damages under the Spending
Clause and the Commerce Clause.  Id.  The court held that it
was constitutionally questionable for Spending Clause
legislation to authorize suits against private individuals
who are not parties to the metaphorical federal funding
contract between Congress and the State.  Id. at 1339-42.
Under the Commerce Clause, the court held there would be a
serious question about the constitutionality of individual
damages under RLUIPA because it is questionable whether
RLUIPA regulates activity that substantially effects
interstate commerce in any way.  Id. at 1342-47.

In the present case the Court finds the reasoning of

12

<u>Madison</u> and <u>Dakar</u> to be persuasive.  To create a claim for damages under RLUIPA against a state or its employees in their official capacities "the waiver of sovereign immunity must extend unambiguously to such monetary claims."  <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996).  Unlike 42 U.S.C. § 1983 which explicitly creates "an action at law", RLUIPA only creates an action for "appropriate relief" which is at best an ambiguous extension to monetary claims.  Therefore, RLUIPA does not create a claim for monetary damages against the defendants in their official capacities.

Upon holding that the language "appropriate relief against a government" does not include damages against the state or its officials, it would be inconsistent to find that the language includes damages against an individual but not against a government.  Following the reasoning of <u>Dakar</u> it would also raise serious constitutional questions to find that RLUIPA allows for damages against the individual.

While Bock urges a broader reading of RLUIPA, its language does not support it.  While some courts have held that "appropriate relief" should be construed broadly, <u>see</u>, <u>e.g.</u>, <u>Smith v. Allen</u>, 502 F.3d at 1270-71, to do so would violate the constitutional limits placed on Congress.  Bock

13

argues that short term prisoners such as himself will be left without a remedy if damages are not allowed under RLUIPA because actions for injunctive relief will become moot once they are released.  This proposition does not alter the analysis of the constitutional limits placed on Congress.

RLUIPA does not create an action for damages against state employees in either capacity.  Summary judgment is appropriate for the defendants on the RLUIPA claims.

IV.  Qualified Immunity

Defendant Turner argues that he is entitled to qualified immunity because he was acting reasonably to maintain the safety and security of Northwest.  The doctrine of qualified immunity shields governmental officials from liability for conduct taken within the scope of their official duties, as long as "'their conduct does not violate a clearly established constitutional right of which a reasonable person would have known.'"  Huminski v. Corsones, 386 F.3d 116, 143 (2d Cir. 2004) (quoting Shechter v. Comptroller of the City of New York, 79 F.3d 265, 268 (2d Cir. 1996)). "Clearly established means that (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second

14

Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." Pabon v. Wright, 459 F.3d 241, 255 (2d Cir. 2006) (quoting Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003)).

Bock argues that the Department's own internal policy clearly established his rights to practice his religion, and therefore it was unreasonable for Defendants to believe his rights were being protected.  Department policy requires facilities to make "reasonable efforts" to allow inmates to practice their religion and make "every effort" to seek an alternative practice before barring a practice which presents a safety risk.  Vermont Department of Corrections Policy 380 §§ 4.2, 4.5.  Department policy takes the protection of religious freedom so seriously that the Commissioner must approve any denial of religious accommodations.  Id. § 4.5.1.  It is reasonable to infer that Turner knew of the policy and knew that denying Bock's requests for religious accommodations violated his rights. The issue of qualified immunity therefore cannot be decided at this stage.

V.  Punitive Damages

Finally, Defendants argue that there is no evidence of malice, so Bock's claim for punitive damages under § 1983 should be dismissed.  Punitive damages may be awarded when a defendant's conduct is motivated by malice or when it involves reckless or callous indifference to the rights of others.  New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 121 (2d Cir. 2006).  A claimant must show a positive element of conscious wrongdoing to be awarded punitive damages.  Id.

The Court finds that Bock has produced enough evidence to make a reasonable inference of malice.  No report on Bock's requests was ever sent to the Commissioner before they were denied, as required by Department policy.  This allows for a reasonable inference of callous indifference to Bock's rights.  Bock has also alleged that inmates of other religions were allowed more accommodations than he was, such as Christmas lights being allowed where an electric menorah was not.  Denying accommodations based on which religion the inmate is could demonstrate conscious wrongdoing.  These disputes are sufficient to deny summary judgment on punitive damages at this stage.

<u>Conclusion</u>

For the foregoing reasons I recommend that Defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART.  I recommend that all of Bock's claims against defendants Gold and Ryan be DISMISSED.  I recommend that all of Bock's claims under RLUIPA be DISMISSED.  I recommend that all of Bock's claims against the defendants in their official capacities be DISMISSED.  I recommend that Bock's claim for injunctive relief be DISMISSED.

Dated at Burlington, in the District of Vermont, this 28th day of November, 2007.


<u>/S/ Jerome J. Niedermeier</u>___
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See</u> Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).